UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEYBANK NATIONAL ASSOCIATION,

Plaintiff,

v.

MOSES LAKE INDUSTRIES, INC., a
Washington corporation,

Defendant.

CASE NO. C09-0202-JCC

ORDER

This matter comes before the Court on Defendant's Motion to Dismiss for Improper Venue, or in the Alternative, Motion to Transfer Venue (Dkt. No. 5), Plaintiff's Response in opposition (Dkt. No. 8), and Defendant's Reply (Dkt. No. 12). The Court has carefully considered these documents, their supporting declarations, and the balance of the record and has determined that oral argument is not necessary. The Court hereby finds and rules as follows.

## I. BACKGROUND

This is a diversity breach of contract action. (Civil Cover Sheet (Dkt. No. 1-2).) Plaintiff contends that Defendant failed to pay certain amounts due pursuant to a June 2008 oral agreement. (Compl. ¶ 51 (Dkt. No. 1).) The alleged oral agreement was governed by a prior agreement, the ISDA Master Agreement, a contract the parties had entered into in 2001 that governed interest rate swap transactions between the parties. (*Id*. ¶¶ 8, 51–56.) Plaintiff filed this action in the Western District of

ORDER – 1

1  Washington, asserting that venue was proper in this district because "a substantial amount of the events
2  giving rise to the claim herein occurred in this district." (*Id.* ¶ 6.) Defendant, a company residing in
3  Moses Lake, Washington, within the Eastern District of Washington, moves the Court to dismiss
4  pursuant to Rule 12(b)(3) for improper venue or to transfer under the federal venue statute. The
5  pertinent facts are as follows.

On October 1, 2001, the parties entered into the ISDA Master Agreement. (*Id.* ¶ 8.) In 2008, the parties began to discuss the possibility of entering into an interest rate swap transaction that would be governed by the ISDA Master Agreement. (*Id.* ¶ 24.) To that end, on June 12, 2008, Kristin Tofani, Defendant's Chief Financial Officer, contacted Tom Sortomme, an employee of Plaintiff's Moses Lake branch, by email to discuss the matter.[1] (*Id.* ¶ 25; Resp. 2 (Dkt. No. 5).) A telephone conference was then held between Sortomme and John Lee of Plaintiff and Tofani and Mike Harvey of Defendant. (Compl. ¶ 27 (Dkt. No. 1).) Sortomme and Tofani were both in their respective offices in Moses Lake. (Resp. 2 (Dkt. No. 5).) Harvey was in his car in Portland, Oregon, at the time of the call. (*Id.*) Unbeknownst to Tofani or Harvey, who were joined to the call initiated by Sortomme and Lee, Lee was in his office in Bellevue, Washington, within the Western District of Washington. (Compl. ¶ 27 (Dkt. No. 1); Resp. 3 (Dkt. No. 5).)

During the call, Tofani, Harvey, Lee, and Sortomme discussed the details of the proposed interest rate swap transaction. (Compl. ¶ 28 (Dkt. No. 1).) Plaintiff alleges that Harvey agreed verbally that the terms were acceptable to Defendant and that Plaintiff should proceed with the transaction. (*Id.* ¶ 30.) Later that day, Plaintiff sent a confirmation to Defendant setting forth the terms of the transaction. (*Id.* ¶ 32.) Plaintiff alleges that Defendant's representatives confirmed in writing the agreement that was reached during the teleconference. (*Id.* ¶ 33.) On about June 23, 2008, Lee followed up with Defendant

---

[1]Defendant asserts that during their long-term business relationship, Ms. Tofani's conversations, meetings, and email exchanges with Mr. Sortomme that are relevant to the allegations in the Complaint all occurred in Moses Lake, Washington. (Resp. 2 (Dkt. No. 5).)

ORDER – 2

regarding the confirmation, as a signed copy had not been received by Plaintiff. (*Id*. ¶ 34.) In fact, a signed copy was never sent to Plaintiff. (*Id*. ¶ 35.) The ISDA Master Agreement states that "[t]he parties intend that they are legally bound by the terms of each Transaction from the moment they agree to those terms (whether orally or otherwise)." (*Id*. ¶ 36.) Plaintiff alleges that during the June 12 teleconference, the parties entered an oral contract that Defendant thereafter repudiated or disaffirmed and under which Defendant has failed to make any of the payments due. (*Id*. ¶¶ 42, 45.) Plaintiff seeks to recover on a breach of contract theory. (*Id*. ¶¶ 51–56.)

Defendant argues that this case stems from a long-term banking relationship between Plaintiff's Moses Lake branch and Defendant, which is located in Moses Lake. (Resp. 1 (Dkt. No. 5).) According to Defendant, no oral contract or agreement was made during the teleconference on June 12, 2008. (*Id*. at 2 n.2.) However, Defendant asserts, even if an agreement was reached during that brief phone call of five minutes or less, Defendant was not informed that Lee was in Bellevue, Washington. (*Id*. at 3.) Defendant contends that all other contacts between the parties occurred in Moses Lake or Quincy, Washington, not in the Western District of Washington. (*Id*. at 2.) Defendant points out that all records regarding Defendant's transactions with Plaintiff are stored at its offices in Moses Lake. (*Id*.)

## II. DISCUSSION

The Court must now determine whether Plaintiff filed this case in an improper venue. If venue is proper in the Western District, then the Court must determine whether to nonetheless transfer the case to the Eastern District for the convenience of the parties and witnesses. The Court will address each of these questions in turn, below.

### A. Dismissal or Transfer for Improper Venue

#### 1. Applicable Law

The federal venue statute provides that where, as here:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in

ORDER – 3

which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). If a State has more than one judicial district, a corporation may be deemed to reside "in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State[.]" 28 U.S.C. § 1391(c).

"Once venue is challenged, the burden is on the plaintiff to show that venue is proper." *Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1160 (E.D. Cal. 2003) (internal quotation omitted). If a case is determined to have been filed in an improper venue, Federal law provides that the Court should either dismiss or, "in the interest of justice, transfer" the case to a district in which it could have been brought. 28 U.S.C. § 1406(a).

### 2. Analysis

Defendant is a corporate entity located in the Eastern District of Washington.[2] The sole ground

---

[2] Plaintiff does not expressly dispute that Defendant "resides" in the Eastern District, making 28 U.S.C. § 1391(a)(1) unavailable as a basis for finding venue proper here. Indeed, the Civil Cover Sheet completed by Plaintiff's attorney states that Defendant resides in Grant County, within the Eastern District. (Dkt. No. 1-2.) Presumably in an abundance of caution, Defendant asserts in its motion that it does not reside in the Western District and argues that its contact with the Western District would not subject it to personal jurisdiction if this district were a separate State. Plaintiff failed to specifically address that argument in its Response. The Court agrees that on the basis of the record, there is insufficient evidence to support a finding that Defendant can be said to reside in this district for the purposes of 28 U.S.C. § 1391. According to Plaintiff, Defendant's sole contact with this district is one phone call. Plaintiff does not allege that Defendant had "continuous and systematic general business contacts" with the Western District upon which general jurisdiction could be based if the Western District were a separate State. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). Additionally, the Court doubts whether Plaintiff has alleged sufficient facts to support specific jurisdiction. The Ninth Circuit uses a three-part test to determine whether specific jurisdiction may be applied to a particular defendant:

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws[;] (2) [t]he claim must be one which arises out of or results from the defendant's forum-related activities[; and] (3) [e]xcercise of jurisdiction must be reasonable.

ORDER – 4

that Plaintiff puts forth to support venue in this district is its contention that "a substantial amount of the events giving rise to the claim herein occurred in this district." (Compl. ¶ 6 (Dkt. No. 1).)

As described above, venue may properly be laid in the Western District if it can be said that "a substantial part of the events or omissions giving rise to the claim occurred" in this district. *See* 28 U.S.C. § 1391. The Court must therefore determine whether Lee's presence in the Western District during the five-minute phone call of June 12, 2008, during which the contract negotiation and acceptance allegedly occurred is "a substantial part of the events" giving rise to the breach of contract claim herein.[3]

"The 'events or omissions' inquiry focuses on 'relevant activities of the defendant, not of the plaintiff.'" *Renteria v. Ramanlal*, No. C07-0658-PHX-ROS, 2009 WL 73675, at *6 (D. Ariz. Jan. 9, 2009) (*quoting Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995); *also citing LeRoy v. Great W. United Corp.*, 443 U.S. 173, 183–84 (1979) ("the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial.")); *see also Silver Valley Partners, LLC v. De Motte*, 400 F. Supp. 2d 1262, 1269 (W.D. Wash. 2005) ("The events must be substantial, have a nexus with the claims alleged, and reflect defendants' activities, not those of plaintiffs."). Additionally, in determining substantiality, courts make "more a qualitative than a quantitative inquiry." 17 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 110.04[1] (3d ed. 2009).

---

*Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995) (stating that if any of the three criteria is not met, then jurisdiction in the forum would deprive the defendant of due process). Defendant did not initiate the phone call at issue, nor was Defendant aware that Lee was in the Western District during the phone call. The Court would be hard pressed to find that under these circumstances, Defendant purposefully availed itself of the privilege of doing business in the Western District. This is especially true given that the alleged oral contract was not intended to be performed in the Western District and did not commence any ongoing relationship with the Western District. The Court therefore finds that it would be unreasonable for the Western District to exercise personal jurisdiction over Defendant if the Western District were a separate State.

[3]The Court bears in mind that there may be more than one district in which venue is proper; "[t]he chosen venue need not be the best venue, only a qualifying venue." *Silver Valley Partners, L.L.C., v. De Motte*, 400 F. Supp. 2d 1262, 1269 (W.D. Wash. 2005).

ORDER – 5

"In making its determination, the court ought not focus solely on the matters that gave rise to the filing of the action, but rather should look at the entire progression of the underlying claim." *Id*. As such:

> [I]n contract cases, courts must consider not only the place of performance but all relevant events such as where the contract was negotiated or executed, where the alleged breach occurred, and where the alleged harm occurred, in order to determine whether some substantial part of these events occurred in the forum state.

*Id*. For example, in *Renteria*, the District of Arizona found that, although Hawaii was the district where the most significant events or omissions occurred, Arizona was a proper venue because the plaintiff was a resident of that district when he negotiated and executed the agreement at issue; any financial injury suffered by the plaintiffs was suffered in Arizona where their business was located; and throughout the negotiations, the defendants were "well aware that they were entering into business deals with parties centered in Arizona" making it fair that they be haled into court there. 2009 WL 73675, at *6. As another illustrative example, in *Kirkpatrick v. Rays Group*, the Western District of New York found venue properly laid in its district where purchase orders stated on their face that bills were to be sent to an address in that district, the plaintiff sent the defendant three letters from her office in that district, the plaintiff had several pertinent business conversations in person and over the telephone from her office in that district, and the alleged harm to the plaintiff from the defendant's conduct occurred in that district. 71 F. Supp. 2d 204, 213–14 (W.D.N.Y. 1999). However, the Second Circuit explicitly declined to decide "whether the negotiation and issuance of a contract in a given judicial district, standing alone, is sufficient to lay venue in that district." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 n.2 (2d Cir. 2005) (cautioning district courts to "take seriously the adjective 'substantial'" in construing the venue statute "strictly").

Plaintiff has not pointed to any authority, nor has the Court found any, supporting the proposition that one phone call directed at Defendants, standing alone—even one consisting of contract negotiations—should be considered "substantial" for venue purposes. *Cf. Tig Ins. Co. v. NAFCO Ins. Co., Ltd.*, 177 F. Supp. 2d 561, 567 (N.D. Tex. 2001) (finding that substantial events giving rise to the

ORDER – 6

claim occurred in the district where ongoing mutual exchanges of communications between the parties occurred in the district, contracts were issued there, and a significant amount of remediation efforts took place in the district); *Moore v. AT&T Latin Am. Corp.*, 177 F. Supp. 2d 785, 789 (N.D. Ill. 2001) (finding a substantial part of the events giving rise to the claim existed in that district where the underlying contracts were negotiated through the plaintiffs there, sent to plaintiff's counsel there, signed by plaintiffs there, and defendants directed numerous communications at the plaintiffs and their counsel there). In the instant case, Defendant did not initiate the call with Lee, (Resp. 4 (Dkt. No. 5)), and therefore did not purposely direct any communications to the Western District. None of Defendant's employees or representatives were in the Western District during that telephonic negotiation. Of the four individuals alleged to have participated in the phone call, only one was in the Western District. Plaintiff has not claimed that the alleged contract was to be carried out in the Western District, that the alleged breach of contract happened in this district, nor that any resulting harm was suffered here. Moreover, the governing ISDA Master Agreement was negotiated, executed, and performed in the Eastern District. (Reply 3 (Dkt. No. 12).) None of Defendants' acts or omissions occurred in the Western District. Under these circumstances, the Court does not find that "a substantial part of the events" giving rise to the breach of contract claim herein occurred in the Western District.

Where a district court finds venue to be improperly laid, "the presumption should be in favor of transfer as the normal procedure, [as] dismissal is only appropriate in unusual circumstances." 14D CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3827 (3d ed. 2007). In the interests of justice, the Court hereby TRANSFERS this case to the Eastern District of Washington, a district in which the case could have been brought originally. *See* 28 U.S.C. § 1406(a).

**B.  Transfer Venue for Convenience of the Parties**

Even if venue were proper here, the Court finds that the convenience of the parties and witnesses supports transfer of this case to the Eastern District.

ORDER – 7

1. **Applicable Law**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Under § 1404(a), the district court has discretion 'to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (*quoting Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).) In deciding whether to transfer for convenience, the court may weigh multiple factors, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Id*. at 498–99. "Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge." *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) (*quoting Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).

2. **Analysis**

Taking the pertinent factors into consideration, the Court finds substantial support for transferring the case to the Eastern District.

   a. **The Location Where the Relevant Agreements Were Negotiated and Executed**

Although one of the two individuals representing Plaintiff during the telephonic negotiation that allegedly resulted in an oral contract for a swap transaction was located in Bellevue, Washington, the other individual representing Plaintiff and one of the two individuals representing Defendant were located in the Eastern District of Washington during the call. The second individual representing Defendant at that negotiation was in his car in Portland, Oregon, at the time; however, he works at Defendant's headquarters in the Eastern District. (Reply 5 (Dkt. No. 12).) Further, if the swap

ORDER – 8

transaction at issue was a valid oral contract and had been performed, it would have been performed in the Eastern District. Therefore, the alleged oral agreement for the swap transaction occurred largely in, and was connected most significantly with, the Eastern District.

Additionally, the ISDA Master Agreement, which governed the swap transaction agreement at issue, was negotiated, executed, and performed in the Eastern District. (*Id*. at 4–5.) The Court finds therefore that this factor weighs in favor of transfer.

**b.      The State that is Most Familiar With the Governing Law**

It is disputed at this stage whether New York law or Washington law applies. (Resp. 7 (Dkt. No. 8).) Either way, both parties agree that this factor is neutral or should be accorded little weight in the analysis. (*Id*.; Reply 5 n.2 (Dkt. No. 12).) The Court agrees with the parties that either district can apply the law equally as the other, whether it be the law of New York or Washington State.

**c.      The Plaintiff's Choice of Forum**

Plaintiff chose to litigate in the Western District. However, "the plaintiff's choice of forum is accorded less weight if it is not the plaintiff's residence[.]" MOORE, *supra*, § 111.13[1][c][ii]. Plaintiff is a corporate entity whose principal place of business is Cleveland, Ohio. (Compl. ¶ 1 (Dkt. No. 1).) Further, the plaintiff's choice is also accorded less weight if the chosen forum is not the place where the operative events occurred. MOORE, *supra*, § 111.13[1][c][iii]. The Court finds that most of the operative events occurred in the Eastern District of Washington rather than the Western District. Therefore, the Court assigns less weight to this factor than it would otherwise.

**d.      The Respective Parties' Contacts With the Forum; Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum**

The only contact Plaintiff alleges that Defendant has had with the Western District is the one phone call with Lee. Plaintiff asserts that Lee is a key witness for Plaintiff and that his office is located in the Western District. (Resp. 8 (Dkt. No. 8).) However, all other contacts and dealings between the parties occurred in the Eastern District. (Mot. 2 (Dkt. No. 5).) All other witnesses besides Lee, except

ORDER – 9

1 for any employees of Plaintiff located in Ohio who may have relevant information, are located in the Eastern District. (Reply 5 (Dkt. No. 12).) Indeed, Plaintiff concedes that "[u]ndoubtedly, some witnesses are located in the Eastern District of Washington, in Moses Lake." (Resp. 8 (Dkt. No. 8).) Defendant's contacts with the Eastern District are continuous and ongoing. Plaintiff had a long history of doing business with Defendant in Moses Lake. The Court finds that this factor favors transfer to the Eastern District.

### e. The Ease of Access to Sources of Proof

The Court is persuaded that most of the documents and witnesses are located in the Eastern District. Tofani, Sortomme, and Harvey, and all of Defendant's documents are located in the Eastern District. (Reply 5 (Dkt. No. 12).) Only Lee and the documents in his office are located in the Western District. This factor strongly favors transfer.

Accordingly, even if venue is proper in the Western District, the Court finds that transfer would be appropriate and fair for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a).

### III. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to Dismiss for Improper Venue, or in the Alternative, Motion to Transfer Venue (Dkt. No. 5) and TRANSFERS this case to the Eastern District of Washington.

DATED this 13th day of May, 2009.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER – 10